IN RE the IMPOSITION OF SANCTIONS IN Dawn ALT et al. v. Richard S. CLINE et al.:

George BURNETT, Appellant-Petitioner,†

v.

Dawn ALT, Mark Alt and Cody Alt, Respondents.
[Case No. 96–3356]

Dawn ALT, Mark Alt and Cody Alt, a minor, by his guardian ad litem, James A. Johnson, Plaintiffs-Respondents,†

Dr. Ernesto L. ACOSTA, Appellant-Petitioner,

v.

Richard S. CLINE, M.D.,Charles J. Green, M.D., Women's Health Specialists, S.C., Appleton Medical Center, Physicians Insurance Company of Wisconsin, Sentry Insurance Company, Outagamie County Department of Human Services, State of Wisconsin Department of Health and Social Services, and Wisconsin Patients Compensation Fund, Defendants.
[Case No. 96–3588]

STATE of Wisconsin EX REL. Dawn ALT, Mark Alt and Cody Alt, a minor, by his guardian ad litem, James A. Johnson, Petitioners,†

v.

Dr. Ernesto L. ACOSTA, Richard S. Cline, M.D.,

†Motion for reconsideration denied May 5, 1999.

Charles J. Green, M.D., Women's Health Specialists, S.C., Appleton Medical Center, Physicians Insurance Company of Wisconsin, Sentry Insurance Company, Outagamie County Department of Human Services, State of Wisconsin Department of Health and Social Services, and Wisconsin Patients Compensation Fund, Respondents. [Case No. 98–0029–W]

Supreme Court

*Nos. 96–3356, 96–3588, 98–0029–W. Oral argument October 13, 1998.—Decided February 18, 1999.*

(Also reported in 589 N.W.2d 21.)

For the appellant-petitioner-respondent, Dr. Ernesto L. Acosta, there was briefs by *George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay and oral argument by *George Burnett*.

For the plaintiffs-respondents-petitioners there were briefs by *Thomas Kent Guelzow, Michael L. Laufenberg,* and *Guelzow & Laufenberg, Ltd.*, Eau Claire and *James A. Johnson* and *Johnson & Houlihan, S.C.*, Rhinelander and oral argument by *Thomas Kent Guelzow*.

For the defendants-respondents, Richards S. Cline, M.D., Women's Health Specialists, S.C., Physicians Insurance Company of Wisconsin and Wisconsin Patients Compensation Fund, there was a brief by *Paul H. Grimstad, John F. Mayer* and *Nash, Spindler, Dean & Grimstad*, Manitowoc, and oral argument by *Paul Grimstad*.

For the defendant-respondent, Appleton Medical Center, there was a brief by *Jonathan M. Menn* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.*, Appleton and oral argument by *Jonathan M. Menn*.

Amicus curiae brief was filed by *Mark L. Thomsen* and *Cannon & Dunphy*, Brookfield for the Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Mark L. Adams* and *State Medical Society of Wisconsin*, and *Jeffrey J. Kassel* and *LaFollette & Sinykin*, all of Madison for the State Medical Society of Wisconsin.

¶ 1. WILLIAM A. BABLITCH, J. Ernesto L. Acosta, M.D. and his attorney, George Burnett, appeal a decision of the court of appeals requiring Dr. Acosta

to answer a certain question posed to him at a deposition and affirming sanctions on Burnett for instructing Dr. Acosta not to answer it. Burnett claims that the question posed required the expert opinion of Dr. Acosta and that Dr. Acosta, although an expert, was not required to answer it. He argues that the sanctions were an erroneous exercise of the circuit court's discretion because he was substantially justified in directing his client not to answer. We agree. Accordingly, the decision of the court of appeals is reversed.

¶ 2. The plaintiffs, Dawn and Mark Alt and their son, Cody Alt, for the first time on appeal have requested that this court issue a supervisory writ ordering the circuit court to enter a default judgment against defendants as a sanction for alleged discovery abuses. We deny granting a supervisory writ because in addition to failing to follow the proper procedure, plaintiffs have not made a sufficient showing to justify a supervisory writ.

¶ 3. The issues in this case arise from a deposition taken of Dr. Acosta by the plaintiffs when, at the direction of his attorney Mr. Burnett, Dr. Acosta refused to answer the question, "No matter what the cause, a patient with a history of term pregnancy and a gush of blood[,] that's abnormal?" The refusal presents three issues: 1) Did the question require the expert opinion of Dr. Acosta? 2) If so, did Dr. Acosta have a legal privilege to refuse to answer it? 3) Were the sanctions imposed by the circuit court on attorney Burnett for directing Dr. Acosta to refuse to answer an erroneous exercise of discretion?

¶ 4. These issues generate from a case with a complex history. On October 2, 1989, plaintiff Dawn Alt went into labor and by a cesarean section performed by Dr. Richard S. Cline, gave birth to Cody Alt.

79

Cody was born with catastrophic injuries including brain injury and other severe temporary and permanent injuries. Cody's parents, Dawn and Mark Alt, and Cody, by his guardian ad litem (collectively the "Alts" or "plaintiffs"), sued various parties including Dr. Cline who performed the cesarean section delivery, and the medical clinic at which Dawn Alt delivered the baby. The Alts alleged that the defendants were negligent in their duties in the delivery of Cody.

¶ 5. During discovery, the plaintiffs named a number of medical doctors as expert witnesses, including Dr. Acosta. Dr. Acosta had provided prenatal care to Dawn and wrote her discharge summary after Cody Alt's birth. Dr. Acosta was not present at Cody's delivery, and he was not named as a defendant in the case.

¶ 6. At his first deposition on September 20, 1993, Dr. Acosta appeared with attorney Paul Grimstad who represented Dr. Cline and the medical clinic. The deposition ended when plaintiffs' and defendants' attorneys disagreed regarding a line of questioning which Grimstad characterized as requesting Dr. Acosta's expert opinion rather than a recounting of his personal observations.

¶ 7. The plaintiffs then filed a motion to compel discovery and to remove Grimstad as counsel for Dr. Acosta. The Outagamie County Circuit Court, Judge Dee R. Dyer, presiding, granted the motion, determining that the line of questioning in dispute was proper and disqualifying Grimstad as Dr. Acosta's counsel. The circuit court also imposed sanctions against Grimstad. The court of appeals affirmed.[1]

¶ 8. Dr. Acosta then hired his own counsel, attorney George Burnett. In a series of correspondence

[1] *Alt v. Cline*, No. 94–2076, unpublished slip op. (Wis. Ct. App. June 6, 1995).

between Burnett and plaintiffs' counsel, Burnett attempted to clarify the scope of questions that would be posed to Dr. Acosta at a second deposition. Plaintiffs' counsel, attorney Thomas K. Guelzow and guardian ad litem, attorney James A. Johnson, indicated that absent a protective order, they would question Dr. Acosta to the full extent allowed by Wisconsin's liberal discovery rules. Attorney Burnett did not request a protective order.

¶ 9. Dr. Acosta's second deposition on July 23, 1996, again ended when attorney Burnett directed Dr. Acosta to not answer questions that he asserted asked for information based on Dr. Acosta's expert opinion rather than his personal observations. Specifically, Burnett objected to the following questions:

Q. And if you were the OB that was treating this woman at the time knowing that there had been an ultrasound done and wanting to see that report, what would you have done?

. . . [and]. . .

Q. No matter what the cause, a patient with a history of term pregnancy and a gush of blood[,] that's abnormal?

¶ 10. Plaintiffs' counsel again filed a motion, requesting an order to compel discovery and for sanctions. The circuit court made its decision orally from the bench during the motion hearing. The court determined that the first question regarding what Dr. Acosta would have done need not be answered. That determination is not the subject of this appeal. It is the second question that is before us. The court determined that the second question regarding whether a gush of blood was abnormal should have been answered.

81

¶ 11. The circuit court also granted plaintiffs' motion for an order imposing sanctions pursuant to Wis. Stat. § 804.12(2) and imposed sanctions of $2,335 against Burnett.

¶ 12. Dr. Acosta and Burnett appealed, and the court of appeals affirmed both circuit court orders. *Burnett v. Alt*, 215 Wis. 2d 203, 214, 216, 572 N.W.2d 895 (Ct. App. 1997).

¶ 13. Burnett and Dr. Acosta petitioned this court for review. Plaintiffs also petitioned this court for a supervisory writ pursuant to Wis. Stat. §§ (Rule) 809.51 and 809.71, ordering the circuit court to enter a default judgment against defendants on the grounds of discovery abuse. This court granted both petitions.

¶ 14. In addition to the issue regarding the supervisory writ, which we do not grant, three issues are presented: 1) Did the question posed to Dr. Acosta require his expert opinion? We hold that it did. 2) Did Dr. Acosta, a non-party physician, have a legal privilege to refuse to answer it? We hold that under the circumstances presented he did. 3) Did the circuit court erroneously exercise its discretion in imposing sanctions against Burnett for directing Dr. Acosta to not answer the allegedly objectionable question? Because Dr. Acosta was not required to answer the question, attorney Burnett was substantially justified in directing him not to answer it. Therefore, we hold that the circuit court erroneously exercised its discretion in imposing sanctions. Accordingly, we reverse the court of appeals' decision.

I.

¶ 15. We must first determine whether the question posed to Dr. Acosta asked for his expert opinion. At the second deposition of Dr. Acosta on July 23, 1996, he

was asked the following question: "No matter what the cause, a patient with a history of term pregnancy and a gush of blood[,] that's abnormal?" Stated another way, the question in essence was: "Is a gush of blood occurring to a patient with a history of term pregnancy an abnormal condition?"

¶ 16. A circuit court has discretion whether to compel discovery. *Borgwardt v. Redlin*, 196 Wis. 2d 342, 350, 538 N.W.2d 581 (Ct. App. 1995). This court will uphold a discretionary decision if the court reviewed the facts and applied the proper standard of law. *Id.* However, to determine whether the circuit court applied the proper standard of law in this case, we must determine whether the question asked for Dr. Acosta's expert opinion.

¶ 17. A question asks for expert testimony if it requires "scientific, technical, or other specialized knowledge," Wis. Stat. § 907.02 (1993–94),[2] to answer the question. Such specialized knowledge is that which is not within the range of ordinary training or intelligence. *State v. Johnson*, 54 Wis. 2d 561, 564, 196 N.W.2d 717 (1972) (citing *Pollock v. Pollock*, 273 Wis. 233, 77 N.W.2d 485 (1956) and *Cramer v. Theda Clark Mem. Hosp.*, 45 Wis. 2d 147, 172 N.W.2d 427 (1969)). Asking for expert testimony "call[s] upon [persons] of exceptional experience and qualifications to give their opinion. . . ." *Philler v. Waukesha County*, 139 Wis. 211, 214, 120 N.W. 829 (1909).

¶ 18. There can be no doubt that the question posed called for an expert opinion. Whether a gush of

---

[2] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

blood in a person with a history of term pregnancy is normal or abnormal can only be answered in any meaningful and relevant way by a trained physician. What is normal? What is abnormal? Certainly a lay person, medically untrained and uneducated, is in no position to answer such a question with anything other than a speculative guess.

¶ 19. The question called for Dr. Acosta's opinion, an opinion which could only be based upon his specialized knowledge, knowledge not within the range of ordinary training and intelligence. Accordingly, it was a question asking for an expert opinion.

## II.

¶ 20. Having determined that the question at issue asked for Dr. Acosta's expert opinion, we now turn to the second issue presented by this case: whether Dr. Acosta has a legal privilege to refuse to provide his expert opinion. We conclude that under the circumstances presented the answer is yes.

¶ 21. Whether a witness has a legal privilege to refuse to provide expert testimony is a question of law which this court reviews de novo. *See Vultaggio v. Yasko*, 215 Wis. 2d 326, 329, 572 N.W.2d 450 (1998).

¶ 22. As a general rule, no person has a privilege to refuse to give evidence. Wisconsin Stat. § 905.01 provides:

**905.01 Privileges recognized only as provided.** Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
(1) Refuse to be a witness; or
(2) Refuse to disclose any matter; or

84

(3) Refuse to produce any object or writing; or

(4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

¶ 23. Privileges are the exception, not the rule. "[P]arties in litigation are entitled to every person's evidence, except when a person from whom evidence is sought has a privilege not to give evidence that is 'inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin.' " *Borgwardt*, 196 Wis. 2d at 350–51 (quoting Wis. Stat. § 905.01). *See also* Wis. Stat. § 804.01(2)(a) (reprinted in part below).[3]

¶ 24. Having a right to refuse to provide certain testimony is a privilege. To determine whether an expert has a legal privilege to refuse to provide an expert opinion we must determine whether a statute, supreme court rule or the federal or state constitutions expressly or implicitly provides for a testimonial privilege for experts. Although we find no express provision in the statutes, supreme court rules or constitutions granting a privilege in all cases for expert testimony, there is an express statement in the statutes regarding court-appointed experts.

¶ 25. Wisconsin Stat. § 907.06 regarding court-appointed experts provides in pertinent part: "**(1)**

---

[3] Wisconsin Stat. § 804.01(2)(a) provides in pertinent part:

**(2)** SCOPE OF DISCOVERY. Unless otherwise limited by order of the court in accordance with the provisions of this chapter, the scope of discovery is as follows:

(a) *In general.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . .

APPOINTMENT. . . .The judge may appoint any expert witnesses agreed upon by the parties, and may appoint witnesses of the judge's own selection. An expert witness shall not be appointed by the judge *unless the expert witness consents to act*." (Emphasis supplied.) This provision was included in § 907.06 as originally enacted. *Wisconsin Rules of Evidence*, 59 Wis. 2d R1, R215. The language of this rule is clear and unambiguous. Reasonable people could not differ regarding the meaning of this rule. A judge may not appoint an expert unless the expert consents to so act.

¶ 26. We conclude that this express grant implies a privilege to refuse to testify if the expert is called by a litigant. If a court cannot compel an expert witness to testify, it logically follows that a litigant should not be able to so compel an expert. It makes little if any sense to conclude that a litigant has greater rights than a court with respect to obtaining testimony from experts.

¶ 27. We conclude that a witness's privilege to refuse to provide expert testimony is inherent in Wis. Stat. § 907.06. Any other result would be inconsistent and fly in the face of logic.[4]

¶ 28. Having determined that a witness has a legal privilege to refuse to provide expert testimony, we must determine the extent of such privilege. Dr. Acosta argues that an expert has an absolute privilege not to testify or, in the alternative, a qualified privilege.

---

[4] We note that the circuit court implicitly recognized an expert witness privilege when it determined that attorney Burnett appropriately made an objection to the first question posed to Dr. Acosta, regarding what he would have done. The Alts did not challenge this circuit court determination. Because we determine that the question regarding whether a gush of blood is abnormal also asks for Dr. Acosta's expert opinion, Dr. Acosta also did not have to answer that question.

86

¶ 29. Cases across the country vary in the approach to compelling experts to testify. Some states have adopted an absolute privilege for experts. Under the absolute privilege the witness is only required to testify regarding his or her observations, just as any other witness. The witness is not compelled to give expert testimony even if the witness had formed opinions prior to the deposition and without additional study, experimentation, thought or reflection. *See Ondis v. Pion*, 497 A.2d 13 (R.I. 1985); *People v. Thorpe*, 72 N.E.2d 165 (N.Y. 1947); *Stanton v. Rushmore*, 169 A. 721 (N.J. 1934).

██

¶ 30. Other courts, including this court nearly 90 years ago, have adopted a narrow qualified privilege for experts. Under the narrow qualified privilege, a witness may not be compelled to give expert testimony if doing so requires any amount of study, experimentation, thought or reflection. *Philler*, 139 Wis. at 215. *See also Reed v. Fetherston*, 785 F. Supp. 1352, 1353 (E.D. Wis. 1992). If, however, a witness already has an opinion, formed without the need for further study, experimentation, thought or reflection, that opinion is a fact to which the witness must testify. *Philler*, 139 Wis. at 215.

¶ 31. Some courts have adopted a broader qualified privilege for experts. Under this broader qualified privilege, an expert may be forced to provide expert testimony but only if the compelling party "affirmatively demonstrate[s] some compelling necessity for an expert's testimony that overcomes the expert's and the public's need for protection. Additionally, an adequate plan of compensation must be presented." *Mason v. Robinson*, 340 N.W.2d 236, 242 (Iowa 1983). *See also, Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556,

560–61 (7th Cir. 1984). Furthermore an expert only can be compelled to give previously formed opinions and cannot be required to engage in any out-of-court preparation. *Mason*, 340 N.W.2d at 242–43.

¶ 32. The appropriate scope of expert privilege requires a balance between the right of expert witnesses to be free from testifying against their will and the needs of the court and litigants for testimony. A person who has expended resources to attain specialized knowledge should not be forced to part with that knowledge upon demand, absent compelling circumstances. We do not force lawyers to provide services to anyone who walks in the door. We do not force other professionals to provide their services absent compelling circumstances. We see no reason to treat experts in a court of law any differently.

¶ 33. On the other hand, the general maxim that everyone has a right to every person's evidence, is premised on the need of the judicial system to have access to all information needed to reach the truth. *State v. Migliorino*, 170 Wis. 2d 576, 587, 489 N.W.2d 678 (Ct. App. 1992) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)). *See also Mason*, 340 N.W.2d at 242. In some situations, it is conceivable that a particular expert's testimony is uniquely necessary. "Although the duty to testify requires sacrifices from a citizen, the inconvenience to the witness may be overborne by the need of the court and litigant for the testimony." *Mason*, 340 N.W.2d at 242. *See also Deitchman*, 740 F.2d at 563. The cornerstone of expert testimony is the need for such testimony to assist the trier of fact. Wis. Stat. § 907.02. An expert's testimony is generally based on applying the expert's specialized knowledge to a

certain set of facts to then draw conclusions and render an opinion. *Mason*, 340 N.W.2d at 242.

¶ 34. As appears to be the case here, there can be a number of people within a field with similar specialized knowledge capable of rendering an expert opinion on the question or questions asked. In such instance, the opinion of one particular expert is not irreplaceable. "[U]nlike factual testimony, expert testimony is not unique and a litigant will not be usually deprived of critical evidence if he cannot have the expert of his choice." *Id.*

¶ 35. We believe that the broad qualified privilege for experts, adopted by the Iowa Supreme Court in *Mason*, properly strikes the balance between the competing interests of the needs of the court and litigants for testimony and the implied privilege of expert witnesses to be free from testifying against their will. Accordingly, we hold that absent a showing of compelling circumstances, an expert cannot be compelled to give expert testimony whether the inquiry asks for the expert's existing opinions or would require further work.[5] In addition to demonstrating a compelling need for the expert's testimony, the party seeking the expert's testimony must present a plan of reasonable compensation. Finally, if the party seeking an expert's opinion is able to show a compelling need for the expert's opinion, an expert can only be compelled to give existing opinions. Under no circumstances can an expert be required to do additional preparation. We

[5] Our holding does not affect the circuit court's ability to "order further discovery [of an opposing expert expected to testify at trial] by other means, subject to such restrictions as to scope and such provisions. . .concerning fees and expenses as the court may deem appropriate." Wis. Stat. § 804.01(2)(d)1.

believe that this approach strikes a balance between a litigant's need for irreplaceable or unique testimony, and the expert's right to be free from compulsion.

¶ 36. In the present case, the Alts did not show a compelling need for Dr. Acosta's testimony with respect to the particular question asked. They argue that he is a unique witness because he provided prenatal care to Dawn Alt and wrote her discharge summary. We disagree. Dr. Acosta may be unique with respect to the prenatal care provided to Dawn Alt and he must testify as to his observations in that role. However, he does not appear to be unique with respect to the question asked. Dr. Acosta's prenatal care of Dawn Alt and authoring her discharge summary make him no more and no less qualified than any other obstetrician to give an expert opinion about whether a gush of blood in a patient who has a history of term pregnancy is abnormal.

¶ 37. The Alts argue that the testimony to which an expert can be compelled to testify was established nearly 90 years ago in *Philler*. They assert that according to *Philler* an expert must testify regarding existing opinions although he or she cannot be compelled to engage in further study, experimentation, thought or reflection. *Philler*, 139 Wis. at 215. We agree that this is the directive of *Philler* but contrary to the Alts' assertion, *Philler* is no longer the law in Wisconsin.

■

¶ 38. With the adoption of the Wisconsin Rules of Evidence, a privilege which existed at common law is no longer valid unless adopted by the legislature or a supreme court rule, or required by the state or federal constitution. *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis. 2d 190, 202, 248 N.W.2d 433 (1977); Wis. Stat. § 905.01.

> [I]f there existed a prior common law privilege. . ., unless such privilege was provided by or was inherent or implicit in statutes, or in the rules of the supreme court, or was required by the United States or Wisconsin constitution at the time the appellant asserted the privilege, this court could not, after the enactment of sec. 905.01, recognize such a privilege.

*Id.* The common law rule as expressed in *Philler* that an expert may be compelled to testify to an opinion he or she has already formed, *Philler*, 139 Wis. at 215, was not provided by, or inherent or implicit in the statutes, supreme court rules, nor required by the state or federal constitution. Therefore, after the enactment of Wis. Stat. § 905.01, the court cannot recognize the common law privilege as expressed in *Philler*.[6] As discussed above, the concepts of *Philler* were modified and recreated when the legislature enacted Wis. Stat. § 907.06, prohibiting courts from appointing experts without their consent. Unlike *Philler* which required experts to testify regarding existing opinions, § 907.06 makes no such requirement.

---

[6] As support for its determination that the narrow privilege for expert witnesses recognized in *Philler* should not be overruled, the dissent asserts that *Philler* has been cited with approval several times since the Wisconsin Rules of Evidence were enacted. Dissent at 107. However, our opinion regarding the narrow privilege recognized for expert witnesses does not overrule the provisions of *Philler* regarding county payment of subpoenaed witnesses, *Payment of Witness Fees in State v. Huisman*, 167 Wis. 2d 168, 172–73 n.2, 482 N.W.2d 665 (Ct. App. 1992), or that employment of experts is governed by contract law, *Secura Ins. Co. v. Wisconsin Public Service Corp.*, 156 Wis. 2d 730, 735, 457 N.W.2d 549 (Ct. App. 1990).

## III.

¶ 39. At this point, we have determined that the question posed to Dr. Acosta about whether a gush of blood was abnormal asked for his expert opinion. We have also determined that absent compelling circumstances Dr. Acosta has a qualified privilege to refuse to answer the question. We now turn to the third issue presented by this case: whether the circuit court erroneously exercised its discretion in imposing sanctions against Burnett for directing Dr. Acosta not to answer the question.

¶ 40. A circuit court has discretion to impose sanctions for discovery abuses. *Paytes v. Kost*, 167 Wis. 2d 387, 393, 482 N.W.2d 130 (Ct. App. 1992) (citing *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991)). "A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Paytes*, 167 Wis. 2d at 393. Because we concluded above, as a matter of law, that absent compelling circumstances a witness has a qualified privilege to refuse to provide expert testimony, we conclude that the circuit court did not apply the proper standard of law. Accordingly, the circuit court erroneously exercised its discretion in imposing sanctions.

¶ 41. In response to Burnett and Dr. Acosta's conduct at the second deposition, plaintiffs' counsel filed a motion to compel discovery pursuant to Wis. Stat. § 804.12(1) and (2) and for sanctions pursuant to § 804.12(2). Section 804.12(2) provides in pertinent part:

**(2)** FAILURE TO COMPLY WITH ORDER. (a) If a party or an officer, director, or managing agent of a party or a person designated under s. 804.05(2)(e) or 804.06(1) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under sub. (1) or s. 804.10, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . .

(b) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

In other words, if the deponent fails to comply with an order to provide or permit discovery, e.g., fails to answer a deposition question, the court may impose various sanctions including the imposition of reasonable expenses.

¶ 42. It is not clear in the record whether the circuit court imposed sanctions on Burnett only under Wis. Stat. § 804.12(2) as a sanction for failing to comply with the court's prior order to compel discovery or if it also imposed expenses under Wis. Stat. § 804.12(1) (reprinted below)[7] as a sanction for granting plaintiffs'

---

[7] Wisconsin Stat. § 804.12(1) provides in pertinent part:

**(1)** MOTION FOR ORDER COMPELLING DISCOVERY. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery . . .

. . .

(c) *Award of expenses of motion.* 1. If the motion is granted, the court shall, after opportunity for hearing, require the party or

second motion to compel discovery. However, regardless of the basis for the court's imposition of sanctions, our determination is the same because both §§ 804.12(1) and (2) allow the court to deny a motion to impose sanctions if the non-compliant party was substantially justified.

■

¶ 43. Parties can obtain discovery regarding any relevant matter that is not privileged. Wis. Stat. § 804.01(2)(a). Although the circuit court should not rely on the judgment of the attorneys involved for their self-interested determination that a privilege exists, *Franzen v. Children's Hospital*, 169 Wis. 2d 366, 386–87, 485 N.W.2d 603 (Ct. App. 1992), a substantiated assertion of privilege is substantial justification for failing to comply with an order to provide or permit discovery.

¶ 44. At Dr. Acosta's second deposition, the Alts' attorney asked Dr. Acosta whether a gush of blood was abnormal for a patient with a history of term pregnancy. Contrary to the dissent's assertion that there was no substantiated assertion of an expert witness privilege, dissent at 112, the record shows that Dr. Acosta's attorney, Burnett, specifically objected on the grounds that the question asked for an expert opinion: "Let me object to the form of the question. Again, that asks the doctor for expert opinion and I'm going to direct him not to answer that question." Attorney Burnett explained that he was unwilling to allow Dr. Acosta to give "wide-open expert testimony" regarding

deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

the care and treatment provided by the physician and others present at the child's birth. For this, the circuit court imposed sanctions.

¶ 45. Were we to uphold sanctions in this case, we would be forcing Burnett and Dr. Acosta to make a choice between protecting a privilege and avoiding sanctions. Had Dr. Acosta answered the question regarding whether a gush of blood was abnormal, his privilege to refuse to provide expert testimony would have been violated. Although sanctions would then have been avoided, and even though a reviewing court might later strike the answer, this might be little consolation to the expert who for whatever reason was forced to testify against his or her will. We cannot put attorneys and deponents in this untenable situation.

¶ 46. We caution attorneys that our holding in this case is not a license to assert unsubstantiated privileges. An unsubstantiated and unfounded privilege is not substantial justification for not imposing sanctions under Wis. Stat. § 804.12(2). *See B&B Investments v. Mirro Corp.*, 147 Wis. 2d 675, 687–88, 434 N.W.2d 104 (Ct. App. 1988).

¶ 47. In sum, because we have concluded, as a matter of law, that Dr. Acosta was not required to answer the question, we determine that Burnett was substantially justified in objecting to the question and directing Dr. Acosta to not answer it. Accordingly, the circuit court erroneously exercised its discretion in imposing sanctions because it did not apply the proper standard of law. We reverse the court of appeals' decision.

## IV.

¶ 48. We now reach the fourth issue presented by this case: whether granting a supervisory writ ordering the circuit court to enter a default judgment against the defendants in this case is appropriate. We conclude that a supervisory writ is not appropriate for two reasons. First, plaintiffs failed to follow the proper procedure by first petitioning the court of appeals for a supervisory writ as required by Wis. Stat. § (Rule) 809.71. Second, plaintiffs have not made a sufficient showing to justify a supervisory writ.

¶ 49. The plain language of Wis. Stat. § (Rule) 809.71 requires that before this court can grant a supervisory writ, the moving party must first "file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals." § (Rule) 809.71. *See also* Judicial Council Notes—1981, Wis. Stat. § (Rule) 809.71 (West Stat. Ann. 1994). There is nothing in the record, the briefs filed with the court of appeals, or the court of appeals' decision, *Alt*, 215 Wis. 2d 203, that indicates plaintiffs ever petitioned the court of appeals for a supervisory writ. The plaintiffs also have not demonstrated that it was impractical to first seek a supervisory writ in the court of appeals.

¶ 50. Even if the plaintiffs had followed the proper procedure, the plaintiffs have not made a sufficient showing to justify a supervisory writ ordering the circuit court to enter a default judgment against defendants.

> A petition for a supervisory writ will not be granted unless: (1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3)

the duty of the trial court is plain and it must have acted or intends to act in violation of that duty, and (4) the request for relief is made promptly and speedily.

*State ex rel. Oman v. Hunkins*, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984) (citing *State ex rel. Beaudry v. Panosian*, 35 Wis. 2d 418, 426, 151 N.W.2d 48 (1967)).

¶ 51. Regarding the first criterion for a supervisory writ, that an appeal is an inadequate remedy, the plaintiffs argue that the circuit court and court of appeals have recognized the discovery abuses occurring in this case. They assert, however, that neither court has imposed adequate sanctions. We disagree. As discussed above, imposing sanctions is a decision within the circuit court's discretion. *Paytes*, 167 Wis. 2d at 393. A discretionary decision will not be overturned by an appellate court if the circuit court examined the relevant facts, applied the proper standard of law and, using a rational process demonstrated in the record, reaches a conclusion that a reasonable judge could reach. *Id.* Imposing monetary sanctions is one of many sanctions available to the circuit court to enforce discovery orders. Wis. Stat. § 804.12(2). Because it is within the circuit court's discretion to determine which of the available sanctions appropriately addresses the non-compliance, we cannot determine that an appeal is an inadequate remedy.

¶ 52. Regarding the second criterion in *Oman* that grave or irreparable harm will result, plaintiffs argue that Dr. Acosta's testimony is irreparably tainted by the discovery abuses of his attorney and the defendants' attorneys. We disagree. We do not understand plaintiffs' insistence on obtaining the expert testimony of Dr. Acosta. We recognize that he was

Dawn Alt's treating physician and wrote her discharge summary. However, Dr. Acosta has not disputed that he must testify to his observations as a witness. Regarding his expert testimony, the record shows that plaintiffs have named many other medical experts. Although the record is not clear about the exact nature of the testimony of each of these named expert witnesses, there are undoubtedly other experts in the world who could testify regarding obstetrical procedures. While plaintiffs may not attain the testimony they hoped for from Dr. Acosta, there are countless other experts on whom they could call.

¶ 53. Turning to the third criterion listed in *Oman*, plaintiffs have not shown that the circuit court acted or intends to act in violation of a plain duty. Dismissal as a sanction for discovery abuses, as the plaintiffs request, is proper only when the moving party shows that the non-compliant party acted in bad faith or engaged in egregious conduct. *Johnson*, 162 Wis. 2d at 275 (citations omitted). There is no doubt that the attorneys in this case have unfortunately developed a contentious relationship. However, we find nothing in the record that indicates Burnett's actions rose to the level of egregious conduct. Furthermore, Burnett was correct in asserting that the question posed by plaintiff's counsel during deposition asked for Dr. Acosta's expert opinion.

¶ 54. There is also nothing in the record to indicate that the action of the attorneys for the defendants in this case rose to the level of egregious conduct or actions made in bad faith. Rather the attorney for defendants, Dr. Cline and the Women's Health Specialists, ceased all communications with Dr. Acosta in compliance with the circuit court order following Dr.

Acosta's first deposition. Accordingly, the circuit court did not have a plain duty to impose sanctions beyond what it, in its discretion, determined was appropriate in this case, monetary sanctions.

¶ 55. Finally, the fourth *Oman* criterion for a supervisory writ is if the request for relief is made promptly and speedily. Plaintiffs made a request for sanctions pursuant to Wis. Stat. § 804.12(2), along with their motion to compel discovery. Although dismissal of the action is an available sanction under § 804.12(2)(a)3, plaintiffs never specifically requested dismissal as a sanction. While plaintiffs made the request for sanctions promptly and speedily, this factor standing alone is not enough to convince us that a supervisory writ is warranted.

¶ 56. In sum, the plaintiffs have not made a sufficient showing that a supervisory writ entering default judgment against the defendants is appropriate. We accordingly deny plaintiffs' request for a supervisory writ.

*By the Court.*—The decision of the court of appeals is reversed; the petition for a supervisory writ is denied.

¶ 57. ANN WALSH BRADLEY, J. (*dissenting*). Today the majority announces the discovery of an evidentiary privilege previously unheard of in this state. Although unrecognized to date by the bench, bar, or legal scholars, the majority claims that this privilege really has been in existence for the last 25 years. Because the majority ignores the requirement for express legal authority to create such an evidentiary privilege, needlessly discards precedent, and wastes an opportunity to meaningfully address the continuing

problem of incivility in the discovery process, I respectfully dissent.

## I.

## A.

¶ 58. The majority first missteps because it ignores the requirement for definite legal authority to create an evidentiary privilege. Prior to 1973 a court was reluctant to adopt or expand privileges unless such action was a transcendent public good. *See, e.g., State v. Driscoll*, 53 Wis. 2d 699, 706, 193 N.W.2d 851 (1972); *see also Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting). After 1973, pursuant to Wis. Stat. § 905.01 this court lost that ability in its entirety. *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis. 2d 190, 204, 248 N.W.2d 433 (1977). It is statutorily prohibited from creating new privileges. *Davison*, 75 Wis. 2d at 202–04; *State v. Beno*, 110 Wis. 2d 40, 46–47, 327 N.W.2d 712 (Ct. App. 1982), *rev'd on other grounds*, 116 Wis. 2d 122, 341 N.W.2d 668 (1983).

¶ 59. As the majority correctly notes, Wis. Stat. § 905.01 recognizes three types of privileges: (1) those explicitly created by statute; (2) those "inherent or implicit" in explicit statutes; and (3) those required by the federal or state constitutions. Most certainly, there is no express "expert witness privilege" in the statutes of this state, or in any constitutional provision.[1] The majority recognizes as much. However, the majority contends that a solitary sentence in § 907.06(1)

---

[1] Even if Wis. Stat. § 905.01 recognized privileges "available at common law" the majority's action today would have been no less contrary to the statute. An expert witness privilege did not exist at common law. 23 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence*, § 5431, p. 825–26 (1980).

preventing a court from appointing an expert witness to a case unless that witness consents to act is an explicit statute which implicitly or inherently creates a broad expert privilege under § 905.01. Majority op. at 85–86.[2] That sentence provides as follows: "An expert witness shall not be appointed by the judge unless the expert witness consents to act."

¶ 60. This is a slender reed on which to place such great weight. I am unconvinced that a rather tangential sentence in a statute discussing the relationship between an expert and the court can be extrapolated to also regulate conduct between a party and an expert. Read in its entirety Wis. Stat. § 907.06 says little about a court compelling an expert to testify and absolutely nothing about a party compelling an expert to testify.

¶ 61. Yet, without citation to any authority and with only two sentences of analysis to justify its result,

---

[2] The majority fails to offer any discussion, let alone rationale, for its interpretation of the phrase "inherent or implicit." According to the Judicial Council's notes on Wis. Stat. § 905.01, the phrase "inherent or implicit" was inserted, not to give a court some device with which to "interpret" additional privileges. Rather, the notes strongly suggest that the phrase was inserted solely to protect the "work-product privilege"—a privilege the court created prior to 1973 in *State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 150 N.W.2d 387 (1967). Judicial Council Committee Notes, *Wisconsin Rules of Evidence*, 59 Wis. 2d R1, R101 (1973).

This latter interpretation is consistent with the tenor of the rule: new privileges are not to be created except by legislation or Supreme Court rule. *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis. 2d 190, 205–06, 248 N.W.2d 433 (1977). Wisconsin Stat. § 905.01 is not a license for courts to create, modify, or expand privileges; that task must be accomplished by legislative or rule-making action.

the majority leaps from the solitary sentence in Wis. Stat. § 907.06(1) to the conclusion that a witness has a legal privilege to refuse to provide expert testimony. What the majority opinion lacks in legal authority and analysis, it attempts to make up with the bald assertion that "[a]ny other result would. . .fly in the face of logic." Majority op. at 86. I submit that such a result "fl[ies] in the face" of the rule of law that privileges are to be strictly construed.

¶ 62. Moreover, to reach its conclusion the majority necessarily rides roughshod over a basic presumption in this area of law: In the face of silence or confusion regarding the existence of a privilege, the party must testify. *Wright v. Jeep Corp.*, 547 F. Supp. 871, 874 (E.D. Mich. 1982) ("The administration of justice requires testimony of all persons unless reasons are established to the contrary."). In a conflict between testimony and privilege, a "tie" goes to testimony. As the majority itself succinctly states, "Privileges are the exception, not the rule." Majority op. at 85. There is no statute that duplicates the restrictions Wis. Stat. § 907.06 places on a court to a party. The exercise of such creative license in this area defies the statutory and case law prohibition from creating new evidentiary privileges.

¶ 63. Undeterred by this prohibition, the majority advances its discovery of this evidentiary privilege based on a rationale heretofore unrelied upon by any other jurisdiction in this country. I can find no other court that has bought the argument the majority today advances.[3] For example, the court in *Kaufman v. Edel-*

---

[3] While some courts have adopted an expert witness privilege, I can find none that have done so on the statutory basis articulated by the majority. Two of the three cases the majority cites as recognizing "absolute" expert privileges were decided

*stein*, 539 F.2d 811, 818 (2d. Cir. 1976), concluded that Federal Rule 706(a), which contains essentially the same sentence as Wis. Stat. § 907.06, applied only to court compulsion and not to party compulsion of an expert witness. The court stated

> [t]he situation of the court appointed expert who is expected to delve deeply into the problem and arrive at an informed and unbiased opinion differs utterly from that of an expert called by a party to state what facts he may know and what opinion he may know and what opinion he may have formed without being asked to make any further investigation. If any inference is to be drawn from the Federal Rules of Evidence, it is thus against the claim of privilege by an expert, not for it.

*Id.* Similarly the court in *Wright*, 547 F. Supp. at 874–75, drew a sharp distinction between expert testimony compelled by a court and that compelled by a party—namely that Rule 706(a) prohibited the former but, in its silence, allowed the latter. *Id.* at 874. *See also*

---

prior to any codification akin to Wis. Stat. § 907.06. *See People v. Thorpe*, 72 N.E.2d 165 (N.Y. 1947); *Stanton v. Rushmore*, 169 A. 721 (N.J. 1934). Thus, these opinions did not attempt to tie the expert privilege to some statutory provision, but rather looked to the common law to ascertain the "better rule." *See, e.g., Thorpe*, 72 N.E.2d at 166. The court in the third absolute privilege case, *Ondis v. Pion*, 497 A.2d 13 (R.I. 1985), also did not attempt to tie its decision to any statutory provision. Instead it noted that it would not "lightly depart" from a 1959 decision in which it adopted the absolute privilege. *Id.* at 18. Additionally, in *Mason v. Robinson*, 340 N.W.2d 236 (Iowa 1983), the Iowa case the majority finds so persuasive, the court did not explicitly indicate where the "qualified" privilege emanated from, only saying that it was reviewing a trial court's discretionary act. *Id.* at 241–43.

*Snyder v. American Motors Corp.*, 115 F.R.D. 211, 213 (Ariz. 1987) (noting that expert's claim of privilege is incorrect).[4]

¶ 64. The contrast between the majority's opinion and the decisions from these other jurisdictions is striking. No other jurisdiction supports the majority's rationale for discovery of this privilege. Equally striking is the contrast between today's announced discovery of an evidentiary privilege and the legal pedigree of other evidentiary privileges in this state. No other privilege in this state has as obscure an origin as the stealthy expert witness privilege of the majority that lay dormant for the past 25 years.

¶ 65. The creation and modification of the "great" privileges spans the course of centuries. Privileges are glaciers moving—inching, bit by bit—along the surface of the Anglo-American legal tradition. For example, the attorney-client privilege dates back almost to the time of Shakespeare when testimony at trial first came into practice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); 8 *Wigmore on Evidence*, § 2290. The "modern" spousal privilege came into existence in the middle

---

[4] While no court, aside from the majority, has concluded that a rule prohibiting a court from compelling expert testimony also by implication prohibits a party from compelling expert testimony, some courts have been willing to quash a subpoena duces tecum as being overly burdensome on the expert. *See, e.g., Snyder v. American Motors Corp.*, 115 F.R.D. 211, 214–16 (Ariz. 1987); *Buchanan v. American Motors Corp.*, 697 F.2d 151, 152 (6th Cir. 1983) (upholding district court's quashing of the subpoena). However, as will be seen shortly, in the overwhelming number of cases where an expert was relieved of his or her duty to testify for any reason, that expert was not intimately involved with the facts precipitating the litigation. *See* Janet Fairchild, *Right of Independent Expert to Refuse to Testify as to Expert Opinion*, 50 A.L.R.4th 680, § 6(d), p. 693–95.

part of the nineteenth century. *Trammel v. United States*, 445 U.S. 40, 45 (1980); 8 *Wigmore on Evidence*, § 2333. Where the common law was silent, legislatures acted to create the privileges we commonly recognize today. *See* 3 *Weinstein's Federal Evidence*, § 514.11 (noting that three-fourths of states adopted physician-patient privilege since New York passed such legislation in 1828); 8 *Wigmore on Evidence*, § 2394 (noting that priest-penitent privilege is largely a legislative creature of the early twentieth century). *But see* Michael J. Mazza, Comment, *Should Clergy Hold the Priest Penitent Privilege?*, 82 Marq. L. Rev. 171, 175–82 (1998) (discussing commentators arguing that priest-penitent privilege extends perhaps to the sixteenth century).

¶ 66. Such privileges have evolved in our Anglo-American legal tradition and have been expressly codified in our rules of evidence. Likewise, evidentiary privileges of a more recent vintage come with express statutory codification.[5] Not so with the majority's expert witness privilege. If I understand the majority's reasoning, this privilege has existed since the *Wisconsin Rules of Evidence* were adopted in 1973 as both Wis. Stat. § 905.01 and § 907.06 were enacted at that time. The unusual circumstances surrounding the recognition of this privilege, when compared with every other privilege ever known in this state, assures me that the majority is mistaken in its new discovery.

---

[5] *See, e.g.*, 1987 Act 355, § 68 (creating "mediation" privilege at Wis. Stat. § 905.035); § 8, ch. 319, Laws of 1979 (creating "polygraph" privilege at Wis. Stat. § 905.065).

## B.

¶ 67. For the sake of argument, however, I will assume that the majority is correct that the alchemy between Wis. Stat. § 905.01 and § 907.06 somehow has created an expert witness privilege. If this were so, I still would most certainly not conclude that somehow this alchemy overruled *Philler v. Waukesha County*, 139 Wis. 211, 120 N.W. 829 (1909).[6]

¶ 68. While there is nothing remarkable about this court's overruling of its prior case law, at least we normally explain why we are doing so. *See, e.g., State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997) (overruling *Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980)); *State v. Harris*, 206 Wis. 2d 243, 257, 557 N.W.2d 245 (1996) (overruling *State v. Howard*, 176 Wis. 2d 921, 501 N.W.2d 9 (1993)). Here, the majority claims that it did not overrule *Philler* for, lo and behold, the legislature's enactment of the *Wisconsin Rules of Evidence* overruled *Philler*. Thus, the majority asserts that both the overruling of *Philler* and

---

[6] Because the majority treats *Philler* as creating a qualified privilege, for the sake of refuting its argument I will treat *Philler* likewise. However, I do not consider *Philler*'s holding to constitute a privilege. First, the word "privilege" is not used at all in the opinion, a sharp contrast from other privilege cases. Second, *Philler* stands for the simple proposition that "every [person] owes a duty to attend and testify to the material facts that he [or she] knows." *Philler v. Waukesha County*, 139 Wis. 211, 214, 120 N.W. 829 (1909). *Philler* treats all testimony alike. If a witness has information, he or she must testify. *Philler*'s holding that an expert witness cannot be compelled to do additional work is the same as saying that he or she need not obtain additional information so as to make themselves knowledgeable.

the creation of an expert privilege were results occasioned by legislative enactments of 1973.

¶ 69. Until today's announcement by the majority of the overruling of *Philler*, neither the bench nor the bar have been aware of *Philler*'s demise. Since 1973, courts have continued to cite it with approval. *See, e.g., Payment of Witness Fees in State v. Huisman*, 167 Wis. 2d 168, 172–73 n.2, 482 N.W.2d 665 (Ct. App. 1992); *Secura Ins. Co. v. Wisconsin Public Service Corp.*, 156 Wis. 2d 730, 735, 457 N.W.2d 549 (Ct. App. 1990).

¶ 70. This continued reference subsequent to 1973 undermines the majority's assertion that the enactment of the *Wisconsin Rules of Evidence* overruled *Philler*. As I noted above, it is the majority's prerogative to overrule cases, but it ought to at least admit its actions and explain its rationale. The *Wisconsin Rules of Evidence* did not overrule *Philler*; the majority did.

¶ 71. Likewise, the existence of the evidentiary expert witness privilege has gone unnoticed by legal scholars. In a review of the treatises on Wisconsin evidence, there is no reference to the existence of such an expert privilege in this state. *See* Thomas H. Barland & Thomas D. Bell, *The Wisconsin Rules of Evidence* (State Bar of Wisconsin CLE Books, 1998); Daniel Blinka, *Wisconsin Practice: Evidence* (West 1998); Ralph Adam Fine, *Fine's Wisconsin Evidence* (Butterworth, 1997). The alchemy between Wis. Stat. § 905.01 and § 907.06 did not create an evidentiary expert privilege; the majority did.

C.

¶ 72. Assuming that the *Wisconsin Rules of Evidence* created an expert witness privilege and

assuming that *Philler* was overruled in the process, I still cannot understand why the majority, faced with the choice of two qualified privileges, chose the qualified privilege outlined in *Mason v. Robinson*, 340 N.W.2d 236 (Iowa 1983), over *Philler*. Rather, faced with such a choice I believe that *Philler* is the far superior rule.

¶ 73. *Philler*'s premise is simple: The administration of justice requires witnesses—be they "expert" or "lay"—to testify as to what they know. However, *Philler* makes equally clear that this duty does not extend so far as to require a witness to affirmatively undertake any additional preparation, for "study, reflection, etc., is not the function of the ordinary witness." *Id.* at 215. The duty requires witnesses only to provide information that they already possess and does not require witnesses to supplement their existing knowledge.

¶ 74. In contrast to the *Philler* rule's articulated and identified basis in law, the *Mason* rule appears to have been the result of Solomonic wisdom unconcerned with ascertaining the basis in either statutory enactments or common law traditions. *Mason*, 340 N.W.2d at 242 (stating that the court chose to "take a middle ground" between an absolute privilege and no privilege); *id.* at 243 (Larson, J., dissenting) ("[The *Mason*] result does not proceed from a recognition of an established 'expert witness' privilege, because there is none."). Even if the *Mason* rule's legal foundation was more recognizable, it nonetheless creates considerable difficulties in practice that serve to protract and increase the costs of litigation.

¶ 75. This case reflects that concern. As I read the majority opinion, the Alts would not be completely prevented from deposing Dr. Acosta. Because Acosta

was Dawn Alt's treating physician and wrote her discharge summary, the majority opinion allows the Alts to compel him to testify about his observations and the facts surrounding those events. What the majority opinion does not allow the Alts to do is compel Acosta's expert opinion as a physician.

¶ 76. While on paper the majority's distinction between "transaction" testimony and "expert" testimony, *see Reed v. Fetherston*, 785 F. Supp. 1352, 1353 (E.D. Wis. 1992), appears clear, in practice I think that it is not so clear. In many cases, the two types of testimony will inevitably spill one into the other and in the process create an inseparable mixture. Under the rule of the majority, courts and parties will be asked to unmix the mixture—a task that may be difficult and inexact.

¶ 77. In contrast, the *Philler* rule is far easier for courts and parties to follow and therefore has the result of reducing the expense and delay of litigation to parties and reducing the burden of oversight on courts. Under *Philler* a witness must answer a question if he or she has the knowledge to do so. There is no gamesmanship of trying to categorize a question as either transaction or expert testimony so as to either compel or protect an answer. Rather, if a witness has an answer to a question, he or she must give it.[7]

---

[7] As *Philler* recognized, this rule may well be of limited benefit to a party seeking to compel testimony from an expert witness because in many situations, an expert will not be able to give an answer absent review and study. *Philler v. Waukesha County*, 139 Wis. 211, 215–16, 120 N.W. 829 (1909). Nevertheless, *Philler* is in theory and in practice superior to *Mason*.

## D.

¶ 78. Finally, assuming that the *Wisconsin Rules of Evidence* created an expert witness privilege, assuming that *Philler* was overruled in the process, and even assuming that I could adopt the *Mason* rule, I still could not join the majority's mandate in this case reversing the court of appeals. In comparing the facts of this case with those in *Mason* I conclude that the court of appeals must be affirmed.

¶ 79. For all the abstract talk about compelling expert witnesses to testify, we cannot lose sight of one simple fact: Acosta was significantly involved in this case prior to the Alts' attempt to depose him. This appeal is not based on the Alts' attempt to compel an uninvolved expert to testify but rather is about the Alts' attempt to obtain the full testimony of a witness substantially involved in the events both leading up to and following after the alleged negligence.

¶ 80. Acosta's involvement in Dawn Alt's care distinguishes this case from *Mason* and, even under *Mason*'s rule, necessitates an affirmance of the court of appeals. In *Mason*, the plaintiffs attempted to compel the testimony of a professor whose entire connection with the case consisted of a solitary conversation with one of the defendant doctors. *Mason*, 340 N.W.2d at 238.

¶ 81. In deciding that the plaintiffs could not compel Mason to testify, the Iowa Supreme Court stated that "generally an expert witness, *absent some other connection with [the] litigation*, is free to decide whether or not he wished to provide opinion testimony for a party." *Id.* at 242 (emphasis added). This "unrelatedness requirement" was hardly an after-thought on the part of the *Mason* court. *Id.* at 240 (citing *Kaufman v. Edelstein*, 539 F.2d 811, 823 (2d Cir. 1976) (Gurfein,

J., concurring)); *id.* at 242 ("In contrast to factual witnesses who possess knowledge which is unique and many times irreplaceable, expert testimony is not based on any singular personal knowledge of the disputed events."). Based on my reading of the emphasis the *Mason* court placed on the facts of that case, I conclude that were the *Mason* court faced with these facts, it would have reached a different result than today's majority.

¶ 82. Moreover, even the jurisdictions that have adopted an absolute privilege have overwhelmingly done so in cases where the expert was wholly unrelated to the litigation. *See, e.g., Gilly v. City of New York*, 508 N.E.2d 901, 902 (N.Y. 1987); *Commonwealth v. Vitello*, 327 N.E.2d 819, 827 (Mass. 1975); *Kraushaar Bros. & Co. v. Thorpe*, 72 N.E.2d 165, 166 (N.Y. 1947); *Agnew v. Parks*, 343 P.2d 118, 123 (Cal. App. 1959). *See also Shurpit v. Brah*, 30 Wis. 2d 388, 397–98, 141 N.W.2d 266 (1966).

¶ 83. In contrast, the majority opinion takes us into relatively uncharted waters. Under its opinion expert witnesses are not only given a nearly impenetrable shield of protection against unwillingly rendering their opinions when they are unrelated to the litigation, but are also given that same protection when they are deeply involved with factual details that lie at the heart of the litigation. This sets neither the correct nor proper course.

## II.

¶ 84. Finally, I address the issue of sanctions and the continuing problem of incivility in the legal profession, especially as it manifests itself in the discovery process. This court has commented recently on the perceived decline in civility and how this decline increases

costs to the parties, adds to the burdens of already burdened courts, and depreciates the opinion of the legal profession in the eyes of the general public. *Chevron Chemical Co. v. Deloitte & Touche*, 176 Wis. 2d 935, 945–46, 501 N.W.2d 15 (1993); *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 281–82, 470 N.W.2d 859 (1991).

¶ 85. To the extent that perception meets reality this court must find itself on the front lines of this struggle, doing what it can to fashion zealous but civil advocacy. *See State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 103, 454 N.W.2d 770 (1990) (opinion of Bablitch, J.). Yet the majority wastes this opportunity to meaningfully address the continuing problem of incivility.

¶ 86. I note at the outset that although the majority opinion says much about the evidentiary "privilege" of expert witnesses and the extent of that privilege, it incorrectly assumes that privilege was ever asserted in the circuit court. The majority opinion announces that "a substantiated assertion of privilege is substantial justification for failing to comply with an order to provide or permit discovery." Majority op. at 94. Here there was no substantiated assertion of an evidentiary expert witness privilege.

¶ 87. This case already has a long history without ever having gone to trial. The alleged negligence underlying this case occurred in October of 1989. Over nine years later, the case has yet to go to trial. In the intervening years, the discovery disputes between the Alts and the defendants—and between the Alts and Acosta—have taken on a life of their own. This case has generated a score of circuit court rulings, two occasions of sanctions, two appeals to the court of appeals, and

now a supreme court opinion all before any evidence has been put before a finder of fact.

¶ 88. Yet no mention of the word "privilege" can be found in the transcripts of Acosta's depositions, or at the motion hearings, or in the memoranda to the circuit court. It appears that the majority has failed its own test of requiring a "substantiated assertion" of privilege. Because the word is nowhere to be found in the voluminous record on the issues of discovery and sanctions in the circuit court, it can hardly be maintained that there was a "substantiated assertion" of an evidentiary privilege. The majority's conclusion that there was substantial justification for failing to comply with a discovery order is based on a foundation not "substantiated" by this circuit court record.

¶ 89. Our concern on this appeal, of course, only focuses on Acosta's second deposition and its aftermath. Even with this narrow focus, the tenor of the entire litigation is apparent.

¶ 90. At his second deposition, Acosta's new attorney, George Burnett, objected and instructed his client not to answer the questions when the Alts' attorney probed issues relating to statements Acosta made on the discharge summary. This was essentially the same issue that halted Acosta's first deposition, was essentially the same issue that the circuit court concluded should have been answered at the first deposition, and was essentially the same issue that played a part in the circuit court's award of sanctions after Acosta's first deposition. Moreover, at the time that Burnett objected during the second deposition, one of the plaintiffs' attorneys specifically read aloud the circuit court's decision indicating that this line of ques-

tioning was permissible.[8] Nevertheless, Burnett persisted in his refusal to allow Acosta to testify about these matters.

¶ 91. We have on numerous occasions reiterated that a circuit court is given substantial discretion to award sanctions in part because that court is in a significantly superior position to appreciate the conduct of the parties. *See Standard Theatres, Inc. v. Department of Transportation*, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984). That is especially evident in a convoluted case such as this one. Yet, though the path was littered with motions, affidavits, briefs, orders, and opinions, the circuit court was able to succinctly state what occurred—or more accurately, what did not occur—during Acosta's second deposition: "Dr. Acosta should have answered the questions once. He now should have answered the questions twice."

¶ 92. We have in the past said that "[t]he authority to impose sanctions is essential if circuit courts are to enforce their orders and ensure prompt disposition of lawsuits." *Chevron*, 176 Wis. 2d at 946. *See also Aspen Services, Inc. v. IT Corp.*, 220 Wis. 2d 491, 497–99, 583 N.W.2d 849 (Ct. App. 1998). Apparently, the circuit court believed that we meant what we wrote. It is unfortunate that the majority opinion

---

[8] The Alt's attorney read the following from the circuit court's order:

> Therefore [the discharge summary] is an entirely appropriate area of inquiry. Dr. Acosta's deposition shows that Attorney Grimstad effectively precluded Plaintiffs' counsel from exploring the basis of the doctor's opinion relating to a material issue in this action. Evidence objected to at a deposition shall be taken subject to objections. . . .The opinion of Dawn Alt's primary treating physician during her pregnancy and during her hospitalization following Cody's birth, which is contained in the discharge summary, is highly relevant.

undermines that belief. The majority "caution[s] attorneys" that its "holding. . .is not a license to assert unsubstantiated privileges." Majority op. at 95. Considering that the majority rewards just such action in this case where the record reflects no substantiated assertion of privilege, its warning rings hollow.

### III.

¶ 93. In sum, the majority's attempt to mask its creation of an evidentiary expert witness privilege as merely a construction of the *Wisconsin Rules of Evidence* is unpersuasive. There was no evidentiary expert witness privilege at common law and nothing in the *Wisconsin Rules of Evidence* has altered that fact. Moreover, the majority needlessly discards applicable precedent, asserting that its overruling is the handiwork of the legislature. Unfortunately, the discarded precedent is both in principle and practice superior to the rule the majority instead adopts. Finally, the majority wastes an opportunity to meaningfully address the continuing problem of incivility in the discovery process. Accordingly, I respectfully dissent.

¶ 94. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this opinion.